1

2

3

4

5

6

7

8

**IN THE UNITED STATES DISTRICT COURT**

9

**FOR THE EASTERN DISTRICT OF CALIFORNIA**

10

11 ALYAA ATIF ABDULKAREEM,                    No.  2:20-CV-2308-DMC

12              Plaintiff,

13        v.                                   <u>MEMORANDUM OPINION AND ORDER</u>

14 COMMISSIONER OF SOCIAL
   SECURITY,

15
              Defendant.

16

17

18              Plaintiff, who is proceeding with retained counsel, brings this action for judicial

19 review of a final decision of the Commissioner of Social Security under 42 U.S.C. § 405(g).

20 Pursuant to the written consent of all parties, ECF Nos. 7 and 10, this case is before the

21 undersigned as the presiding judge for all purposes, including entry of final judgment.  <u>See</u> 28

22 U.S.C. § 636(c); <u>see also</u> ECF No. 21 (minute order referring case to Magistrate Judge).  Pending

23 before the Court are the parties' briefs on the merits, ECF Nos. 19, 24, and 27.

24              The Court reviews the Commissioner's final decision to determine whether it is:

25 (1) based on proper legal standards; and (2) supported by substantial evidence in the record as a

26 whole.  <u>See</u> <u>Tackett v. Apfel</u>, 180 F.3d 1094, 1097 (9th Cir. 1999).  "Substantial evidence" is

27 more than a mere scintilla, but less than a preponderance.  <u>See</u> <u>Saelee v. Chater</u>, 94 F.3d 520, 521

28 (9th Cir. 1996).  It is ". . . such evidence as a reasonable mind might accept as adequate to support

1  a conclusion." Richardson v. Perales, 402 U.S. 389, 402 (1971).  The record as a whole,

2  including both the evidence that supports and detracts from the Commissioner's conclusion, must

3  be considered and weighed.  See Howard v. Heckler, 782 F.2d 1484, 1487 (9th Cir. 1986); Jones

4  v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985).  The Court may not affirm the Commissioner's

5  decision simply by isolating a specific quantum of supporting evidence.  See Hammock v.

6  Bowen, 879 F.2d 498, 501 (9th Cir. 1989).  If substantial evidence supports the administrative

7  findings, or if there is conflicting evidence supporting a particular finding, the finding of the

8  Commissioner is conclusive.  See Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987).

9  Therefore, where the evidence is susceptible to more than one rational interpretation, one of

10  which supports the Commissioner's decision, the decision must be affirmed, see Thomas v.

11  Barnhart, 278 F.3d 947, 954 (9th Cir. 2002), and may be set aside only if an improper legal

12  standard was applied in weighing the evidence, see Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th

13  Cir. 1988).

14          For the reasons discussed below, the Commissioner's final decision is affirmed.

15

16                    **I.  THE DISABILITY EVALUATION PROCESS**

17          To achieve uniformity of decisions, the Commissioner employs a five-step

18  sequential evaluation process to determine whether a claimant is disabled.  See 20 C.F.R. §§

19  404.1520 (a)-(f) and 416.920(a)-(f).   The sequential evaluation proceeds as follows:

20              Step 1      Determination whether the claimant is engaged in
                            substantial gainful activity; if so, the claimant is presumed
21                          not disabled and the claim is denied;

22              Step 2      If the claimant is not engaged in substantial gainful activity,
                            determination whether the claimant has a severe
23                          impairment; if not, the claimant is presumed not disabled
                            and the claim is denied;
24
                Step 3      If the claimant has one or more severe impairments,
25                          determination whether any such severe impairment meets
                            or medically equals an impairment listed in the regulations;
26                          if the claimant has such an impairment, the claimant is
                            presumed disabled and the claim is granted;
27

28  / / /

2

| | | |
|---|---|---|
| Step 4 | | If the claimant's impairment is not listed in the regulations, determination whether the impairment prevents the claimant from performing past work in light of the claimant's residual functional capacity; if not, the claimant is presumed not disabled and the claim is denied; |
| Step 5 | | If the impairment prevents the claimant from performing past work, determination whether, in light of the claimant's residual functional capacity, the claimant can engage in other types of substantial gainful work that exist in the national economy; if so, the claimant is not disabled and the claim is denied. |

<u>See</u> 20 C.F.R. §§ 404.1520 (a)-(f) and 416.920(a)-(f).

To qualify for benefits, the claimant must establish the inability to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted, or can be expected to last, a continuous period of not less than 12 months.  <u>See</u> 42 U.S.C. § 1382c(a)(3)(A).  The claimant must provide evidence of a physical or mental impairment of such severity the claimant is unable to engage in previous work and cannot, considering the claimant's age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.  <u>See Quang Van Han v. Bower</u>, 882 F.2d 1453, 1456 (9th Cir. 1989).  The claimant has the initial burden of proving the existence of a disability.  <u>See Terry v. Sullivan</u>, 903 F.2d 1273, 1275 (9th Cir. 1990).

The claimant establishes a prima facie case by showing that a physical or mental impairment prevents the claimant from engaging in previous work.  <u>See Gallant v. Heckler</u>, 753 F.2d 1450, 1452 (9th Cir. 1984); 20 C.F.R. §§ 404.1520(f) and 416.920(f).  If the claimant establishes a prima facie case, the burden then shifts to the Commissioner to show the claimant can perform other work existing in the national economy.  <u>See Burkhart v. Bowen</u>, 856 F.2d 1335, 1340 (9th Cir. 1988); <u>Hoffman v. Heckler</u>, 785 F.2d 1423, 1425 (9th Cir. 1986); <u>Hammock v. Bowen</u>, 867 F.2d 1209, 1212-1213 (9th Cir. 1989).

/ / /

/ / /

/ / /

/ / /

3

## II.  THE COMMISSIONER'S FINDINGS

Plaintiff applied for social security benefits on November 22, 2016.  See CAR 15.[1] In the application, Plaintiff claims disability began on November 1, 1984.  See id.  Plaintiff's claim was initially denied.  Following denial of reconsideration, Plaintiff requested an administrative hearing, which was held on January 7, 2020, before Administrative Law Judge (ALJ) Carol A. Eckersen.  In a March 3, 2020, decision, the ALJ concluded Plaintiff is not disabled based on the following relevant findings:

1.  The claimant has the following severe impairment(s): post-traumatic stress disorder (PTSD), depression, spondylosis, degenerative disc disease, and obstructive sleep apnea;

2.  The claimant does not have an impairment or combination of impairments that meets or medically equals an impairment listed in the regulations;

3.  The claimant has the following residual functional capacity: she can perform light work except she can occasionally climb, crouch and crawl. She can frequently balance, stoop, and kneel. She requires a simple, repetitive task in a non-public work environment. She can occasionally interact with coworkers and supervisors. She can sustain attention, concentration, persistence and pace, attend and complete a workday or workweek for simple, repetitive task work. She can adapt to changes associated with a simple, repetitive task.

4.  Considering the claimant's age, education, work experience, residual functional capacity, and vocational expert testimony, there are jobs that exist in significant numbers in the national economy that the claimant can perform.

See id. at 17-30.

After the Appeals Council declined review on September 18, 2020, this appeal followed.

/ / /

/ / /

/ / /

/ / /

/ / /

---

[1]    Citations are to the Certified Administrative Record (CAR) lodged on June 28, 2021, ECF No. 13.

1

**III.  DISCUSSION**

2          In her brief, Plaintiff argues: (1) the ALJ erred in determining that some

3 impairments are non-severe; (2) the ALJ erred in evaluating the medical opinions; and (3) the

4 ALJ erred in evaluating Plaintiff's testimony and statements.

5          **A.     <u>Severity Determination</u>**

6          To qualify for benefits, the plaintiff must have an impairment severe enough to

7 significantly limit the physical or mental ability to do basic work activities.  <u>See</u> 20 C.F.R. §§

8 404.1520(c), 416.920(c).   In determining whether a claimant's alleged impairment is sufficiently

9 severe to limit the ability to work, the Commissioner must consider the combined effect of all

10 impairments on the ability to function, without regard to whether each impairment alone would be

11 sufficiently severe.  <u>See</u> <u>Smolen v. Chater</u>, 80 F.3d 1273, 1289-90 (9th Cir. 1996); <u>see also</u> 42

12 U.S.C. § 423(d)(2)(B); 20 C.F.R. §§ 404.1523 and 416.923.  An impairment, or combination of

13 impairments, can only be found to be non-severe if the evidence establishes a slight abnormality

14 that has no more than a minimal effect on an individual's ability to work.  <u>See</u> Social Security

15 Ruling (SSR) 85-28; <u>see also</u> <u>Yuckert v. Bowen</u>, 841 F.2d 303, 306 (9th Cir. 1988) (adopting

16 SSR 85-28).  The plaintiff has the burden of establishing the severity of the impairment by

17 providing medical evidence consisting of signs, symptoms, and laboratory findings.  <u>See</u> 20

18 C.F.R. §§ 404.1508, 416.908. The plaintiff's own statement of symptoms alone is insufficient.

19 <u>See</u> <u>id.</u>

20          Discussing the severity of Plaintiff's impairments at Step 2, the ALJ stated:

21          The claimant's medically determinable impairments of hernia repair,
           obesity, hearing loss, diabetes, hypothyroid, high cholesterol, and
22         hypertension do not cause more than minimal limitations in the claimant's
           ability to perform basic work activities and therefore are not severe.
23

24         A review of the records reveals these conditions are controlled with
           treatment and result in few, if any, persistent objective clinical findings or
25         reported symptoms. No physician or medical source has indicated that
           these conditions adversely affect the claimant's breathing, pain, ability
26         to ambulate, etc. (Ex. 1F-20F). For example, records show her left ear
           hearing loss was treated with a hearing aid (Ex. 9F, 11F/6-8).
27         Hypothyroidism, hypertension, cholesterol and diabetes are treated with
           medications (Ex. 1F, 4F, 11F, 12F). Her diabetes was "stable" (Ex.
28         12F/108) and improved (Ex. 12F/38) when she is compliant with

medication and diet. Her blood pressure was "not normally" high (Ex. 12F/64) and her thyroid is "well controlled (Ex. 13F/2). Primary care clinic notes document no persistent physical abnormalities on examinations related to these conditions and she has not required any treatment other than generic advice on diet and exercise for obesity (Ex. 1F, 4F, 11F, 12F). An incisional hernia was reducible on examinations despite some tenderness and the hernia was successfully repaired with surgery in November 2018 with no further treatment (Ex. 4F/3, 12F/111, 54, 10F, 11F/14). The residual functional capacity set forth herein takes into account any lingering issues related to these conditions.

CAR 17-18.

Plaintiff specifically takes issue with the ALJ's analysis of her hearing loss, obesity, and hernia repair.

### 1.    Hearing Loss

Regarding the Plaintiff's hearing loss, the record does show near total loss in Plaintiff's left ear, and partial loss in her right ear.  See id. at 453, 498-500.  However, the exhibits to which the ALJ cites show that the Plaintiff had a hearing aid that worked to treat the hearing loss.  See id. at 454, 498.  Additionally, Plaintiff's testimony at her hearing state that she had a functional hearing aid that worked to treat her hearing loss.  See id. at 105-106.  This is substantial evidence that Plaintiff suffered no more than a minimal impairment from her hearing loss, and therefore the ALJ did not err in counting the hearing loss as a non-severe impairment.

### 2.    Obesity

Turning to the issue of obesity, Plaintiff argues that because Plaintiff's obesity may worsen her other conditions, including her back pain, sleep apnea and depression, her obesity should not be found as non-severe, even given a lack of medical records indicating otherwise.  ECF No. 19, 9.  In 1999, obesity was removed from the Listing of Impairments. Obesity may still enter into a multiple impairment analysis, but "only by dint of its impact upon the claimant's musculoskeletal, respiratory, or cardiovascular system."  Celaya v. Halter, 332 F.3d 1177, 1181 n.1 (9th Cir. 2003).  Thus, as part of his duty to develop the record, the ALJ is required to consider obesity in a multiple impairment analysis, but only where it is "clear from the record that [the plaintiff's] obesity . . . could exacerbate her reported illnesses."  Id. at 1182; see also Burch v. Barnhart, 400 F.3d 676, 682 (9th Cir. 2005) (distinguishing Celaya and

concluding that a multiple impairment analysis is not required where "the medical record is silent as to whether and how claimant's obesity might have exacerbated her condition" and "the claimant did not present any testimony or other evidence . . . that her obesity impaired her ability to work"). Where a multiple impairment analysis is not required, the ALJ properly considers obesity by acknowledging the plaintiff's weight in making determinations throughout the sequential analysis. See Burch, 400 F.3d at 684.

Plaintiff argues that other impairments may have been made more severe due to Plaintiff's obesity.  The impairments which Plaintiff claims are worsened by her obesity are listed as severe.  Because the record is silent as to how Plaintiff's obesity affected her capacity to work, the ALJ need only acknowledge Plaintiff's weight in the determination, which occurred here.  See CAR 17, 26.  Therefore, the ALJ did not err in finding obesity to be a non-severe impairment.

### 3.   Hernia

Finally, Plaintiff claims that her hernia should have been considered as a severe impairment.  The ALJ reasoned that the hernia was reducible on examinations, and successfully repaired with surgery in November 2018, with no further treatment necessary.  See CAR 17. Plaintiff argues first that because the surgery to repair Plaintiff's hernia was two years after the application date, the fact that the hernia was surgically repaired should not be a bar to its consideration as a severe impairment during the time period between the alleged onset date and the surgery.  Second, Plaintiff contends that her testimony shows that her hernia had re-opened, would need further surgery, and caused a more than minimal limitations.  Whether the ALJ properly rejected Plaintiff's testimony is addressed below.  Here this Court addresses only whether the ALJ's reasoning for finding that Plaintiff's hernia was a non-severe impairment was in error.

/ / /

/ / /

/ / /

/ / /

1              a.        Time Period Between Onset Date and Hernia Repair Surgery

2              20 C.F.R. section 404.1525(a) requires that impairments last or can be expected to

3    last for a continuous period of at least twelve months.  Given this, and that the alleged onset date

4    is more than twelve months prior to the restorative hernia surgery, Plaintiff's hernia may have

5    been more than a non-severe impairment in the time alleged between onset and surgical repair.

6    The fact that it required surgical repair is evidence that the hernia impairment may have been

7    more than non-severe, and the ALJ does not point to substantial evidence in the record to indicate

8    otherwise.  Therefore, as to the time period between the alleged onset date and the hernia repair

9    surgery, the Court finds that ALJ erred in finding that Plaintiff's hernia constituted no more than a

10   non-severe impairment.  Whether this error was harmful is addressed below.

11             The Ninth Circuit has applied harmless error analysis in social security cases in a

12   number of contexts.  For example, in Stout v. Commissioner of Social Security, 454 F.3d 1050

13   (9th Cir. 2006), the court stated that the ALJ's failure to consider uncontradicted lay witness

14   testimony could only be considered harmless ". . . if no reasonable ALJ, when fully crediting the

15   testimony, could have reached a different disability determination."  Id. at 1056; see also Robbins

16   v. Social Security Administration, 466 F.3d 880, 885 (9th Cir. 2006) (citing Stout, 454 F.3d at

17   1056).  Similarly, in Batson v. Commissioner of Social Security, 359 F.3d 1190 (9th Cir. 2004),

18   the court applied harmless error analysis to the ALJ's failure to properly credit the claimant's

19   testimony.  Specifically, the court held:

20             However, in light of all the other reasons given by the ALJ for Batson's
               lack of credibility and his residual functional capacity, and in light of the
21             objective medical evidence on which the ALJ relied there was substantial
               evidence supporting the ALJ's decision.  Any error the ALJ may have
22             committed in assuming that Batson was sitting while watching television,
               to the extent that this bore on an assessment of ability to work, was in our
23             view harmless and does not negate the validity of the ALJ's ultimate
               conclusion that Batson's testimony was not credible.
24
               Id. at 1197 (citing Curry v. Sullivan, 925 F.2d 1127, 1131 (9th Cir. 1990)).
25

26   In Curry, the Ninth Circuit applied the harmless error rule to the ALJ's error with respect to the

27   claimant's age and education.  The Ninth Circuit also considered harmless error in the context of

28   the ALJ's failure to provide legally sufficient reasons supported by the record for rejecting a

                                              8

1    medical opinion.  See Widmark v. Barnhart, 454 F.3d 1063, 1069 n.4 (9th Cir. 2006).

2            The harmless error standard was applied in Carmickle v. Commissioner, 533 F.3d

3    1155 (9th Cir. 2008), to the ALJ's analysis of a claimant's credibility.  Citing Batson, the court

4    stated:  "Because we conclude that . . . the ALJ's reasons supporting his adverse credibility

5    finding are invalid, we must determine whether the ALJ's reliance on such reasons was harmless

6    error."  See id. at 1162.  The court articulated the difference between harmless error standards set

7    forth in Stout and Batson as follows:

8            . . . [T]he relevant inquiry [under the Batson standard] is not whether the
             ALJ would have made a different decision absent any error. . . it is whether
9            the ALJ's decision remains legally valid, despite such error.  In Batson, we
             concluded that the ALJ erred in relying on one of several reasons in
10           support of an adverse credibility determination, but that such error did not
             affect the ALJ's decision, and therefore was harmless, because the ALJ's
11           remaining reasons *and ultimate credibility determination* were adequately
             supported by substantial evidence in the record.  We never considered what
12           the ALJ would do if directed to reassess credibility on remand – we
             focused on whether the error impacted the *validity* of the ALJ's decision.
13           Likewise, in Stout, after surveying our precedent applying harmless error
             on social security cases, we concluded that "in each case, the ALJ's error . .
14           . was inconsequential to the *ultimate nondisability determination*."

15           Our specific holding in Stout does require the court to consider whether the
             ALJ would have made a different decision, but significantly, in that case
16           the ALJ failed to provide *any reasons* for rejecting the evidence at issue.
             There was simply nothing in the record for the court to review to determine
17           whether the ALJ's decision was adequately supported.

18           Carmickle, 533 F.3d at 1162-63 (emphasis in original; citations omitted).

19           Thus, where the ALJ errs in not providing any reasons supporting a particular

20   determination (i.e., by failing to consider lay witness testimony), the Stout standard applies and

21   the error is harmless if no reasonable ALJ could have reached a different conclusion had the error

22   not occurred.  Otherwise, where the ALJ provides analysis but some part of that analysis is

23   flawed (i.e., some but not all of the reasons given for rejecting a claimant's credibility are either

24   legally insufficient or unsupported by the record), the Batson standard applies and any error is

25   harmless if it is inconsequential to the ultimate decision because the ALJ's disability

26   determination nonetheless remains valid.

27   ///

28   ///

9

Here, the ALJ erred in determining that Plaintiff's hernia constituted no more than a non-severe impairment during the time between onset and surgical treatment.  However, the ALJ addresses Plaintiff's pre-surgical time period in the analysis of Plaintiff's residual functional capacity.

The ALJ stated the following:

> The 2-pound lifting restriction Ms. Rogers provided was apparently based on a statement the claimant made that she was advised not to lift anything over 2 pounds following her hernia surgery (Ex. 12F/32). However, the records from Jason Park, MD show only that the claimant was advised to resume activities, stop smoking, lose weight, and use an abdominal binder for comfort and support following her surgery. She was advised to follow up as needed. There is no mention of a specific weight limitation from Dr. Park (Ex. 10F/3, 36). In fact, prior to surgery, Dr. Park advised the claimant to increase her walking regiment to an additional 2 miles a day before he would attempt the surgery (Ex. 10F/10, 17). She then reported some weight loss with diet and exercise (Ex. 10F/21). Ms. Rogers' September 2018 examination was also "Normal", including her mood and monofilament examination of her feet (Ex. 12F/41).

CAR 26-27.

The ALJ has addressed Plaintiff's residual capacity prior to receiving surgery to repair her hernia, relying on Dr. Park's instructions for Plaintiff to walk up to two miles per day. The ALJ made these determinations even after finding the Plaintiff's hernia to be a non-severe impairment.  Because the ALJ's error at step two would have been harmful only if it resulted in a failure to consider related limitations in determining Plaintiff's residual function capacity, the ALJ's error at step two was harmless.  The Plaintiff's level of impairment, including her hernia, was still considered, and the ALJ's error was immaterial to the ultimate disability determination.

           b.      Time Period After Hernia Repair Surgery

There is no objective medical evidence in the record to show that Plaintiff's hernia had reopened and was causing an impairment.  As stated above, Plaintiff's own statement of symptoms is insufficient to find a medical impairment without objective medical evidence. Therefore, the ALJ did not err in failing to consider any post-surgery hernia-related limitations not supported by objective medical findings.

/ / /

10

1    **B.       Evaluation of Medical Opinions**

2           "The ALJ must consider all medical opinion evidence."  Tommasetti v. Astrue,

3    533 F.3d 1035, 1041 (9th Cir. 2008) (citing 20 C.F.R. § 404.1527(b)).  The ALJ errs by not

4    explicitly rejecting a medical opinion.  See Garrison v. Colvin, 759 F.3d 995, 1012 (9th Cir.

5    2014).  The ALJ also errs by failing to set forth sufficient reasons for crediting one medical

6    opinion over another.  See id.

7           Under the regulations, only "licensed physicians and certain qualified specialists"

8    are considered acceptable medical sources.  20 C.F.R. § 404.1513(a); see also Molina v. Astrue,

9    674 F.3d 1104, 1111 (9th Cir. 2012).  Where the acceptable medical source opinion is based on

10   an examination, the ". . . physician's opinion alone constitutes substantial evidence, because it

11   rests on his own independent examination of the claimant."  Tonapetyan v. Halter, 242 F.3d 1144,

12   1149 (9th Cir. 2001).  The opinions of non-examining professionals may also constitute

13   substantial evidence when the opinions are consistent with independent clinical findings or other

14   evidence in the record.  See Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002).  Social

15   workers are not considered an acceptable medical source.  See Turner v. Comm'r of Soc. Sec.

16   Admin., 613 F.3d 1217, 1223-24 (9th Cir. 2010).  Nurse practitioners and physician assistants

17   also are not acceptable medical sources.  See Dale v. Colvin, 823 F.3d 941, 943 (9th Cir. 2016).

18   Opinions from "other sources" such as nurse practitioners, physician assistants, and social

19   workers may be discounted provided the ALJ provides reasons germane to each source for doing

20   so.  See Popa v. Berryhill, 872 F.3d 901, 906 (9th Cir. 2017), but see Revels v. Berryhill, 874

21   F.3d 648, 655 (9th Cir. 2017) (quoting 20 C.F.R. § 404.1527(f)(1) and describing circumstance

22   when opinions from "other sources" may be considered acceptable medical opinions).

23          For all claims, as here, filed before March 27, 2017, ALJs are bound by

24   regulations and case law requiring ALJs to give physicians' opinions different weights, depending

25   on the relationship between the physician and the claimant.  See 20 C.F.R §§ 404.1527(c) &

26   416.920(c); Garrison v. Colvin, 759 F.3d 995, 1017-18 (9th Cir. 2014).  This rule is known as the

27   treating physician rule.  The weight given to medical opinions depends in part on whether they

28   are proffered by treating, examining, or non-examining professionals.  See Lester v. Chater, 81

F.3d 821, 830-31 (9th Cir. 1995).  Ordinarily, more weight is given to the opinion of a treating professional, who has a greater opportunity to know and observe the patient as an individual, than the opinion of a non-treating professional.  See id.; Smolen v. Chater, 80 F.3d 1273, 1285 (9th Cir. 1996); Winans v. Bowen, 853 F.2d 643, 647 (9th Cir. 1987).  The least weight is given to the opinion of a non-examining professional.  See Pitzer v. Sullivan, 908 F.2d 502, 506 & n.4 (9th Cir. 1990).

In addition to considering its source, to evaluate whether the Commissioner properly rejected a medical opinion in a claim filed before March 27, 2017, the Court considers whether: (1) contradictory opinions are in the record; and (2) clinical findings support the opinions.  The Commissioner may reject an uncontradicted opinion of a treating or examining medical professional only for "clear and convincing" reasons supported by substantial evidence in the record.  See Lester, 81 F.3d at 831.  While a treating professional's opinion generally is accorded superior weight, if it is contradicted by an examining professional's opinion which is supported by different independent clinical findings, the Commissioner may resolve the conflict.  See Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995).

A contradicted opinion of a treating or examining professional may be rejected only for "specific and legitimate" reasons supported by substantial evidence.  See Lester, 81 F.3d at 830.  This test is met if the Commissioner sets out a detailed and thorough summary of the facts and conflicting clinical evidence, states her interpretation of the evidence, and makes a finding.  See Magallanes v. Bowen, 881 F.2d 747, 751-55 (9th Cir. 1989).  Absent specific and legitimate reasons, the Commissioner must defer to the opinion of a treating or examining professional.  See Lester, 81 F.3d at 830-31.  The opinion of a non-examining professional, without other evidence, is insufficient to reject the opinion of a treating or examining professional.  See id. at 831.  In any event, the Commissioner need not give weight to any conclusory opinion supported by minimal clinical findings.  See Meanel v. Apfel, 172 F.3d 1111, 1113 (9th Cir. 1999) (rejecting treating physician's conclusory, minimally supported opinion); see also Magallanes, 881 F.2d at 751.

/ / /

1    Plaintiff challenges the weight given to the following medical opinions: (1) Dr.

2  Kayvan Haddadan, (2) FNP Tanya Rogers, and (3) psychiatrist Sherif Zaher.  ECF No. 19, pgs.

3  12-16.

4         1.    Dr. Haddadan

5    Regarding Dr. Haddadan's medical opinion the ALJ stated the following:

6    In August 2019, Kayvan Haddadan, MD opined that the claimant could
      not return to work due to a recent pain procedure and requested "feasible"
7    accommodations (Ex. 14F/15). In October 2019, he opined that the
      claimant could lift and/or carry 10 pounds occasionally and less than 10
8    pounds frequently. She could stand and/or walk less than 2 hours in an 8-
      hour day and sit less than 6 hours in an 8-hour day. She must alternate
9    sitting and standing. She cannot stoop, crouch or crawl. She can
      occasionally climb, balance, and kneel. She can frequently reach and
10   handle and constantly finger and feel. She must avoid moving machinery
      (Ex. 17F).
11
      These opinions are given little weight. The August 2019 opinion appears
12   to be a temporary limitation while she recovered from her recent injection
      and temporary disability is not contemplated in Social Security
13   regulations. Dr. Haddadan did not provide any specific functional
      limitations or other explanation to indicate that the claimant was unable to
14   meet the demands of work activity.

15   The October 2019 opinion is given little weight because Dr. Haddadan did
      not provide a rationale to explain or support the specific limitations he
16   proposed. His clinic note of the same date documents a series of subjective
      statements from the claimant that appear to be the basis for the responses
17   he provided. However, in the same clinic note, she admitted her
      medications were "helpful" and she denied side effects. Further, his
18   examination was "Normal". Her medications were not changed and no
      new procedures or referrals were prescribed (Ex. 14F/11-14). His opinion
19   is not consistent with his pain management treatment records discussed
      above, which show her pain is adequately controlled with medications and
20   periodic injections resulting in generally mild to moderate pain complaints
      with motion of the spine (Ex. 14F). Finally, his opinion is inconsistent
21   with other discussed examinations and other medical opinions in the
      record.
22
      CAR 27 -28.
23

24    The ALJ gave little weight to the August 2019 opinion because the ALJ

25  determined that that opinion was limited to a temporary issue, and no functional limitations were

26  provided.  Id. at 27.  The ALJ is correct in that the regulations do not contemplate temporary

27  disability, and for this clear and convincing reason, the ALJ did not err in giving little weight to

28  Dr. Haddadan's August 2019 opinion.

1    The ALJ also gave little weight to Dr. Haddadan's October 2019 opinion because

2    of inconsistencies with the other medical opinions on the record, lack of explanation, and

3    evidence that showed that Plaintiff's pain was being effectively managed by the medication she

4    was taking.  Dr. Haddadan's October 2019 opinion is essentially devoid of clinical findings and

5    limited entirely to conclusory statements about the Plaintiff's restrictions.  See id. at 753-54.  The

6    ALJ need not give any weight to any conclusory opinion supported by minimal findings,

7    therefore the ALJ did not err in giving this opinion little weight.  With the additional reason that

8    Plaintiff's pain was being effectively managed in contrast with Dr. Haddadan's opinion, the

9    ALJ's reasons for rejecting his medical opinion were sufficient.

10        2.    FNP Rogers

11   With regard to the opinion of FNP Tanya Rogers, the ALJ stated the following:

12   The record contains a number of opinions that would support the
13   claimant's allegations. However, these opinions are given little weight.
     Tanya Rogers, FNP-C opined in December 2018 that the claimant could
14   lift and carry 2 pounds. She could stand and/or walk for 10 minutes and
     required a walker for longer distances. She could sit for 10 minutes and
15   must alternate sitting and standing frequently. She could never climb,
     balance, stoop, kneel, crouch, or crawl. She could occasionally finger with
16   the bilateral upper extremities. She must avoid heights and moving
     machinery (Ex. 15F).

17   In April 2019, Ms. Rogers opined that the claimant had a moderate
18   limitation in understanding, remembering and applying information, a
     marked limitation in social interactions, and extreme limitations in
19   concentration, persistence, pace, and adaptation/self-management (Ex.
     16F).

20   These opinions are given little weight because a nurse practitioner is not
21   an acceptable medical source as outlined at 20 CFR 416.927. Ms. Rogers'
     clinic notes do not support the severity of limitations she provided (Ex.
22   12F). For example, in August 2019 when she completed some paperwork
     for the claimant, examination was "Normal" with appropriate orientation,
23   appropriate mood and affect, "Normal" insight and judgement (Ex. 12F/4).
     That same month, the claimant requested a prescription for a wheelchair
24   "due to bilateral leg and toe pain", which could have been related to a
     prior assessment of plantar fasciitis (Ex. 12F/30, 48), not due to her
25   medically determinable back impairment. However, a nurse practitioner is
     not qualified to establish the presence of a medically determinable
26   impairment (20 CFR 416.902, and SSR 06-3p). Her examination was
     "Normal" except for pain to palpation of both great toes and some pain
27   behaviors on the exam table (Ex. 12F/6, 8). In April 2019, she was noted
     to ambulate with a seated walker. However, the examination was
28   otherwise "Normal", including psychiatric findings. Moreover, in May
     2019, she denied gait disturbance and arthralgia (Ex. 12F/24, 17).

14

The 2-pound lifting restriction Ms. Rogers provided was apparently based on a statement the claimant made that she was advised not to lift anything over 2 pounds following her hernia surgery (Ex. 12F/32). However, the records from Jason Park, MD show only that the claimant was advised to resume activities, stop smoking, lose weight, and use an abdominal binder for comfort and support following her surgery. She was advised to follow up as needed. There is no mention of a specific weight limitation from Dr. Park (Ex. 10F/3, 36). In fact, prior to surgery Dr. Park advised the claimant to increase her walking regiment to an additional 2 miles a day before he would attempt the surgery (Ex. 10F/10, 17). She then reported some weight loss with diet and exercise (Ex. 10F/21). Ms. Rogers' September 2018 examination was also "Normal", including her mood and monofilament examination of her feet (Ex. 12F/41).

The record contains an In-Home Supportive Services (IHSS) change form dated June 28, 2019 indicating the claimant's allocation increased to 90:49 hours per month (Ex. 16E). However, an April 2018 clinic note when the claimant asked Ms. Rogers to complete IHSS paperwork on her behalf shows that Ms. Rogers' examination was "Normal" (Ex. 12F/65). Similarly, Ms. Rogers' June 21, 2019 examination was "Normal" except her toes, as discussed above (Ex. 12F/8). Thus, the basis for IHSS is not clear. Neither Ms. Rogers nor the other medical providers' records document the presence of a medically determinable impairment or abnormal findings of the upper extremities that would account for the limitations she proposed to the upper extremities. As Ms. Rogers did not identify any abnormal mental health findings on examinations or treat the claimant for any mental impairment other than to refer her to psychiatry as discussed above (Ex. 12F), the basis for the mental limitations she provided is wholly unsupported. The limitations are inconsistent with the discussed objective findings in the mental health treatment records and the sporadic treatment the claimant sought. Ms. Rogers' opinions are not consistent with other discussed physical examinations in the record. For example, mental health records show she ambulated without difficulty. There were no observed pain behaviors or difficulty sitting during sessions (Ex. 7F, 13F, 20F). Finally, the opinions are inconsistent with medical opinions in the record.

CAR 26-27.

FNP Rogers is a nurse practitioner, which is not an acceptable medical source, and as stated above her opinions may be rejected for reasons germane to Ms. Rogers. The ALJ has presented germane reasons for rejecting this opinion, including other examinations and clinical findings by FNP Rogers that contradict her opinion of Plaintiff's level of impairment. See id. at 26-27. This included lifting restrictions, ability of Plaintiff to walk, lack of abnormal mental health findings, and lack of observed pain. See id. Because FNP Rogers is not an acceptable medical opinion source, and because the ALJ gave germane reasons for rejecting her opinion, they did not err in rejecting her opinion.

1          3.    Dr. Zaher

2          With regard to the medical opinion of Dr. Zaher, the ALJ stated the following:

3          In December 2019, psychologist Dr. Zaher opined that the claimant had
           marked limitations in understanding, remembering and applying
4          information, interacting with others, and in concentration, persistence and
           pace. She was moderately limited in adaptation/self-management (Ex.
5          19F).

6          This opinion is given little weight because Dr. Zaher did not provide any
           explanation or rationale for the limitations. His clinic notes do not support
7          the severity of the limitations he provided. She presented in October 2019
           with a variety of depressive, anxiety, and complex trauma symptoms. On
8          examination, she became engaging and cooperative without prompting.
           She was attentive and demonstrated normal speech. Her mood and thought
9          content were depressed but she denied suicidal and homicidal thinking,
           hallucinations, and delusions. There was no evidence of a memory deficit
10         and she was appropriately oriented. Dr. Zaher diagnosed major depressive
           disorder, recurrent, moderate and posttraumatic stress disorder. She
11         attended two additional therapy sessions with Dr. Zaher where she
           continued to demonstrate no deficits in "memory, concentration, or
12         attention". She remained appropriately oriented and cooperative with
           "normal" eye contact. In fact, by the third session in December 2019, her
13         mood and affect were "euthymic" (Ex. 20F).The opinion is not consistent
           with the other discussed treatment the claimant has sought or with the
14         discussed objective mental findings on other examinations. The opinion is
           not consistent with other opinions in the record.
15
           CAR 28.
16

17         The ALJ rejected this opinion because Dr. Zaher's own notes do not support the

18  limitations he has provided for Plaintiff, and due to overall inconsistencies with the medical

19  record.  The ALJ's reliance on Dr. Zaher's own clinical notes is sufficient reason to reject his

20  opinions.  The ALJ points to the exact findings in Dr. Zaher's clinical notes that they use to reject

21  Dr. Zaher's opinion.  The ALJ also explains how the clinical notes of Dr. Zaher do not support his

22  opinion of disability.  See id.  Therefore, the ALJ did not err in giving Dr. Zaher's opinion little

23  weight.

24          C.    **Evaluation of Plaintiff's Testimony and Statements**

25         The Commissioner determines the weight to be given to a claimant's own

26  statements and testimony, and the court defers to the Commissioner's discretion if the

27  Commissioner used the proper process and provided proper reasons.  See Saelee v. Chater, 94

28  F.3d 520, 522 (9th Cir. 1996).  An explicit finding must be supported by specific, cogent reasons.

                                            16

See Rashad v. Sullivan, 903 F.2d 1229, 1231 (9th Cir. 1990).  General findings are insufficient.
See Lester v. Chater, 81 F.3d 821, 834 (9th Cir. 1995).  Rather, the Commissioner must identify
what testimony is not afforded weight and what evidence undermines the testimony.  See id.
Moreover, unless there is affirmative evidence in the record of malingering, the Commissioner's
reasons for rejecting testimony as not credible must be "clear and convincing."  See id.; see also
Carmickle v. Commissioner, 533 F.3d 1155, 1160 (9th Cir. 2008) (citing Lingenfelter v Astrue,
504 F.3d 1028, 1936 (9th Cir. 2007), and Gregor v. Barnhart, 464 F.3d 968, 972 (9th Cir. 2006)).

If there is objective medical evidence of an underlying impairment, the
Commissioner may not discredit a claimant's testimony as to the severity of symptoms merely
because they are unsupported by objective medical evidence.  See Bunnell v. Sullivan, 947 F.2d
341, 347-48 (9th Cir. 1991) (en banc).  As the Ninth Circuit explained in Smolen v. Chater:

> The claimant need not produce objective medical evidence of the
> [symptom] itself, or the severity thereof.  Nor must the claimant produce
> objective medical evidence of the causal relationship between the
> medically determinable impairment and the symptom.  By requiring that
> the medical impairment "could reasonably be expected to produce" pain or
> another symptom, the Cotton test requires only that the causal relationship
> be a reasonable inference, not a medically proven phenomenon.
>
> 80 F.3d 1273, 1282 (9th Cir. 1996) (referring to the test established in
> Cotton v. Bowen, 799 F.2d 1403 (9th Cir. 1986)).

The Commissioner may, however, consider the nature of the symptoms alleged,
including aggravating factors, medication, treatment, and functional restrictions.  See Bunnell,
947 F.2d at 345-47.  In weighing a claimant's statements and testimony, the Commissioner may
also consider: (1) the claimant's reputation for truthfulness, prior inconsistent statements, or other
inconsistent testimony; (2) unexplained or inadequately explained failure to seek treatment or to
follow a prescribed course of treatment; (3) the claimant's daily activities; (4) work records; and
(5) physician and third-party testimony about the nature, severity, and effect of symptoms.  See
Smolen, 80 F.3d at 1284 (citations omitted).  It is also appropriate to consider whether the
claimant cooperated during physical examinations or provided conflicting statements concerning
drug and/or alcohol use.  See Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002).  If the
claimant testifies as to symptoms greater than would normally be produced by a given

17

1    impairment, the ALJ may disbelieve that testimony provided specific findings are made.  See

2    Carmickle, 533 F.3d at 1161 (citing Swenson v. Sullivan, 876 F.2d 683, 687 (9th Cir. 1989)).

3              Regarding Plaintiff's testimony as well as that of lay witnesses the ALJ stated the

4    following:

5              I have considered the claimant's statements and testimony as well as third
              party statements regarding the claimant's symptoms and limitations. The
6              issues raised by the allegations are not the existence of pain, fatigue,
              depression, etc., but rather the degree of pain or other subjective
7              symptoms the claimant experiences. The objective clinical findings,
              although not the only factor considered herein, do not support the degree
8              of pain and functional limitations the claimant alleges.

9              The evidence of record as a whole supports a finding that the claimant's
              symptoms are not of significant proportions. Rather, the evidence shows
10             that the claimant's symptoms are intermittent, mild to moderate at most,
              and not of such intensity and persistence that they significantly limit her
11             capacity for work. Thus, I find that the claimant's allegations are not
              wholly supported insofar as her claims that all work activity is precluded.
12
              CAR 29.
13

14             This is a specific identification of what parts of Plaintiff's testimony are to be

15   refuted.  In isolation, it does not present specific and legitimate reasons for the rejection of that

16   testimony.  However, this analysis comes at the end of a very thorough examination of every part

17   of the record that contravenes Plaintiff's testimony.  See id. at 20-28.  The ALJ considers multiple

18   examinations where Plaintiff reported low to moderate pain and did not require increased dosages

19   of her pain medication.  See id. at 21-23.  The ALJ also considered times where the Plaintiff said

20   that their pain was being effectively controlled by epidural injections or other medication.  Id. at

21   22.  They considered Plaintiff's occasional refusal of additional care, failure to follow up on

22   treatment, and gaps in treatment as evidence that Plaintiff's condition was not as severe as lay

23   testimony indicated.  See id. at 22-23.  In doing so, the ALJ did point to the specific and

24   legitimate reasons for rejecting Plaintiff's testimony about her degree of pain and impairment,

25   and therefore did not err.

26   / / /

27   / / /

28   / / /

18

1              The other main contention regarding Plaintiff's testimony regards her specific

2   claims about her reopened hernia.  The Plaintiff refers to the following testimony:

3           ALJ: Okay. You had had an incision and you had a hernia at the site of an
    incision. . . . ¶ CLMT: Yes. I made operation and then it opened again. . . .

4   ¶ Q And they went in and repaired that area, is that correct? ¶ A I came
    from Turkey with this hernia and then I did the operation here and then it's

5   open again. ¶ Q So since they repaired the surgery here it's open again? ¶
    A Yes. ¶ Q When? ¶ A About a year and a half. ¶ Q What does the doctor

6   propose to do about that? ¶ A I have to pass like so many years and then
    he can redo it again. ¶ Q So you have to wait before he can do it again? ¶

7   A Yes. ¶ Q Does it cause you any problems? ¶ A Prevent me from
    walking and sometimes moving, sleeping. ¶ Q How often does it prevent

8   you from walking, moving, or sleeping? ¶ A All the time. When I'm like
    on my bed, it's hurting me and if I want to walk, it's hurting me all the

9   time. ¶ Q Is it worse than your back pain? ¶ A No. My back pain is more.

10          Id. 96-97.

11             As discussed above, the only objective medical evidence of Plaintiff's hernia after

12  surgery is Dr. Park's statement that "[t]he hernia repair feels secure and intact.  Thee [sic] is no

13  indication for re-operation.  She is at risk for recurrence due to her active smoking and central

14  obesity. . . . She is having some local pain at the repair.  I had recommended using an abdominal

15  binder for comfort and support."  Id. at 459.  Because there is no objective medical evidence of

16  this re-tear, and the ALJ may only consider Plaintiff's testimony regarding severity of symptoms,

17  the ALJ did not err in rejecting this testimony.

18  / / /

19  / / /

20  / / /

21  / / /

22  / / /

23  / / /

24  / / /

25  / / /

26  / / /

27  / / /

28  / / /

1

## IV.  CONCLUSION

2          Based on the foregoing, the court concludes that the Commissioner's final decision

3    is based on substantial evidence and proper legal analysis.  Accordingly, IT IS HEREBY

4    ORDERED that:

5                    1.       Plaintiff's motion for summary judgment, ECF No. 19, is denied;

6                    2.       Defendant's motion for summary judgment, ECF No. 24, is granted;

7                    3.       The Commissioner's final decision is affirmed; and

8                    4.       The Clerk of the Court is directed to enter judgment and close this file.

9

10   Dated:  August 30, 2022

11                                                         _____
                                                          DENNIS M. COTA
12                                                        UNITED STATES MAGISTRATE JUDGE

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28